¶ 56. I concur with the majority's affirmance of Sherron's conviction and sentence. I agree with the well-reasoned opinion on the waiver and plain error issues.
 ¶ 57. However, I write separately to express my view that even absent a valid waiver, there exists no constitutional impediment to the prosecution of Sherron on these facts. When one of the material motives of the accused is to help a known felon avoid detection, arrest, or prosecution, I detect no constitutional impediment to that prosecution based on the argument that by doing so, the State has placed an "undue burden" on the child victim's right to obtain an abortion. I am not prepared to infer that Jane's constitutional right to an abortion may provide a free pass for a third party to commit a felony.
 ¶ 58. The United States Supreme Court has struck down state "rules" that do, in fact, impose an "undue burden" on a female's decision to abort a non-viable fetus. Stenberg v.Carhart, 530 U.S. 914, 921, 120 S.Ct. 2597, 147 L.Ed.2d 743
(2000) (holding "a law designed to further a State's interest in fetal life which imposes an undue burden on the woman's decision before fetal viability is unconstitutional."). In my opinion, prosecuting the mother under the facts of this case creates no "undue burden" on a female's decision to abort a non-viable fetus as was found unconstitutional in Stenberg. The Mississippi statute on the criminality of being an accessory after the fact, applied to circumstances involving statutory rape, is not a law designed to further this state's interest in fetal life. As I appreciate the import of the Supreme Court's rationale, a state may not, by statute, administrative rule, or some other mandatory requirement, impose upon a female's right to abort a non-viable fetus by what has been described as an "undue burden." It simply escapes me how the prosecution of the mother, Sherron, would *Page 43 
fall into the category of an "undue burden."
 ¶ 59. Here, there is no statute that could be found unconstitutional. "A legitimate state interest that does not create an unnecessary burden passes the undue burden test and is constitutional." Pro-Choice Mississippi v. Fordice,716 So.2d 645 (¶ 38) (Miss. 1998) (citing Planned Parenthoodof Southeastern Pennsylvania v. Casey, 505 U.S. 833,112 S.Ct. 2791, 120 L.Ed.2d 674 (1992)). The State certainly has a legitimate interest in prosecuting those individuals who aid and assist known felons in avoiding arrest or prosecution. Additionally, the State's "police power extends to protecting the health of its citizens" and that police power only "rises to an unconstitutional level when that power is exercised in an arbitrary manner." Pro-Choice Mississippi
716 So.2d (¶ 26). I find nothing arbitrary about the State's decision to prosecute Sherron.
 ¶ 60. Regardless, it is not enough that something be an obstacle to an abortion in order for that obstacle to be an unconstitutional prohibition — it must be asubstantial obstacle. Id. I fundamentally fail to appreciate just how prohibiting a parent from concealing the fact that their spouse committed statutory rape against their minor child amounts to a substantial obstacle to that minor child's right to an abortion. In Stenberg, the U.S. Supreme Court examined the constitutionality of a Nebraska statute that banned partial birth abortions. The Supreme Court found that a statute that banned partial birth abortions amounted to a substantial obstacle to a woman's right to an abortion. In this case, Sherron's conviction did not restrict her daughter's right to an abortion — it established a restriction on Sherron's right to conceal the fact that her husband committed statutory rape of her own daughter.
 ¶ 61. In Pro-Choice Mississippi, 716 So.2d at (¶ 53) the Mississippi Supreme Court found that "[t]he State has a legitimate interest in protecting the health of its minors, and in ensuring that their decisions regarding abortion are well informed and carefully considered." Further, the Mississippi Supreme Court held, "[mandatory parental consent does not place an undue burden upon a minor's right to obtain an abortion, particularly in light of the judicial bypass."Id. If a parent has a right to consent to his or her daughter's abortion, and that right is not an undue burden of that daughter's right to an abortion, and the State has a legitimate interest in protecting the health of its minors, then reason dictates that the State may penalize a parent who consents to an abortion with the intent to aid someone in avoiding prosecution for statutory rape of the child that seeks the abortion. The defining feature of that event isintent rather than the act.
 ¶ 62. To me, this case more correctly should focus on Sherron's motive and her intent. Certainly, Sherron could have consented to Jane's abortion and taken her to Tuscaloosa for the procedure and avoided prosecution and conviction. After the abortion, had Sherron kicked Xavier out of the house, filed for divorce, moved out herself, told her mother, Ms. Howard, what happened, reported the incest to DHS or law enforcement as the law mandates, or taken any comparable steps to protect Jane, there would be no doubt that her true motive in assisting Jane with an abortion was to act in Jane's best interests.
 ¶ 63. However, Sherron did not do anything like that. Instead, Sherron continued to live with Xavier and all her children as if nothing had happened, and she told Jane to keep her door locked at night so that Xavier could not leave their marital bed and rape Jane again. Sherron also entered into a conspiracy of silence with Xavier, George, Rosa, Greg, and Jane, and was the leading actor in forever destroying *Page 44 
the most damning evidence of her husband's guilt, the unborn fetus. In her own words, Jane did not report Xavier because she did not know how she would pay her bills without his monthly disability check. By her conduct, she proved to the jury that her true loyalty lay with Xavier, the felon. Even though one of Sherron's motives may have been to protect what she saw as the best interest of her daughter by preventing the birth of a child fathered by a rapist, it is abundantly clear that an unlawful motive existed of helping her husband avoid prison so she could continue with her marriage and pay bills.
 ¶ 64. In my humble opinion, Sherron's conviction as an accessory after the fact is not an undue burden on Jane's constitutional right to an abortion. Sherron was prosecuted for helping her husband avoid detection of his awful crime. Prosecuting her for this evil conduct can not be said to have placed an undue burden on Jane's abortion rights. Jane's right to an abortion does not create immunity by which Sherron is allowed to conceal the fact that Xavier raped Jane and, in so doing, act in Sherron's admitted financial self-interest. The jury weighed conflicting evidence of Sherron's intent. Substantial evidence in the form of Sherron's confession gave the jury sufficient cause to find as it did. I find no constitutional protection that effectively immunizes Sherron's behavior. The majority opinion does not determine whether there exists a constitutional prohibition against prosecuting Sherron. As explained, I have concluded that no such prohibition exists and we should clearly so state. Otherwise, I concur in the majority's resolution.
LEE AND MYERS, P.JJ., AND GRIFFIS, J., JOIN THIS OPINION.